UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60168-CR-ROSENBAUM/MATTHEWMAN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THOMAS EDLER,

        Defendant.
_____/

## ORDER DENYING RECONSIDERATION

This matter is before the Court on Defendant Thomas Edler's Motion for Rehearing/Reconsideration on Court's Order Overruling Objections and Affirming Detention Order (D.E. 32) [D.E. 35]. The Court has carefully considered Defendant's Motion, all supporting and opposing filings, and the entire record. For the reasons set forth below, the Court now denies Edler's Motion for Reconsideration.

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* at 1369 (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Only three major grounds generally justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v.*

*Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)).  Here, Defendant alleges that "newly discovered evidence" justifies reconsideration of the Court's Order Affirming Detention.  *See* D.E. 35.  This Court respectfully disagrees.

The facts underlying the Detention Order in this case are set forth in the Detention Order [D.E. 19] itself and in the Order Affirming Detention [D.E. 32] and will not be repeated here.  In his Motion for Reconsideration, Defendant asserts that, after having reviewed the evidence in this case, he has discovered that the Court's reliance on two portions of the Government's evidentiary presentation during the detention hearing and appeal were misplaced.  First, Defendant notes that the Court's Order Affirming Detention relied in part on the Government's representation that, in at least one of the alleged child-pornography photographs at issue in this case, an adult hand may be seen in the picture pulling down the child's pants.  *See* D.E. 35 at 2.  In fact, however, Defendant explains, no hand pulling down pants is visible in any of the photographs at issue in this matter.  *Id.*  Instead, in one picture, a young boy's pants are partially pulled down, showing the "upper crown of his buttocks," and in a subsequent photograph, a portion of the shorts is further pulled down "over the crease/crack of the buttocks," but no hand may be seen in the frames.  *Id.*

Second, Defendant takes issue with the Court's reliance on the Government's proffer that none of the photographs posted on the Internet were of Defendant's children but were instead of unrelated children only.  *Id.*  In actuality, however, Defendant states, his children may be seen in the background of at least two photographs, although they, unlike the unrelated children in the same pictures, are clothed.  *Id.*  The remainder of Defendant's Motion reargues points raised in the initial appeal.

The Government concedes in its Response that the image where a child's pants were being

pulled down, to which the Government referred during the hearing, did not actually contain a picture of an adult hand, but it is nonetheless clear that the pants are being pulled down by someone other than the child in the photograph.  *See* D.E. 36 at 2.  In another picture, the Government states, an adult male's hand is visible pulling up the shirt of the Rhode Island victim.  *Id.*  In that image, the adult is wearing the Pink Panther watch that appears on Defendant in non-pornographic family photographs.

As for the images of Defendant's own children, the Government emphasizes that its point was that the only naked or allegedly pornographic images that Defendant allegedly took that were distributed on the Internet were of children other than Defendant's — not that no pictures of Defendant's children appeared anywhere on the Internet.  The Court found this fact to suggest that, contrary to Defendant's contention, he was, in fact, involved in distributing the images over the Internet because it is not immediately obvious why someone other than Defendant would have discriminated between similar allegedly pornographic images of Defendant's children and children unrelated to Defendant in uploading such images to the Internet.  Nothing about the fact that, in images on the Internet, Defendant's children can be seen clothed in a few pictures where the focus is on a naked or partially clothed child unrelated to Defendant bears in any material way on the significance of the existence on the Internet of allegedly pornographic pictures of only children who are unrelated to Defendant.

Moreover, the Government further proffers that it has learned since the detention hearing of the existence of another victim in this case — F.W.  *See id.* at 5.  According to the Government, it recovered several images of F.W. from the Internet and computers of other child-pornography suspects in other parts of the country.  *Id.*  These images were taken when F.W. was seven or eight years old.  *Id.*  The Government proffers that F.W. is a relative of the Edlers' through Defendant's

wife, Cheri Edler. *Id.*

During an interview of F.W. on August 13, 2013, F.W. advised law enforcement that his family and the Edlers were friendly for several years in the early 2000's. *Id.* F.W. further related that, when the families spent time together, Defendant photographed F.W. naked and in sexually explicit positions. *Id.* In addition, F.W. stated Defendant had F.W. and his own son, T.E., take sexually explicit images of Defendant. *Id.* On one occasion, F.W. continued, Defendant had the boys photograph him holding his own genitals and spreading apart his buttocks. *Id.* Then, according to F.W., Defendant told the boys to pose in the same way, and he took pictures of them. *Id.*

F.W. further informed law enforcement that throughout the years that he spent time with Defendant, Defendant touched him inappropriately on numerous occasions, estimating about twenty to thirty such incidents. *Id.* In particular, F.W. indicated that this occurred when F.W. was in the pool or hot tub, when Defendant stuck his hands down F.W.'s bathing suit and touched and squeezed F.W.'s testicles. *Id.* at 5-6.

The Government also stated that F.W.'s parents were interviewed on August 13, 2013. *Id.* at 6. They advised law enforcement that they neither condoned nor approved of Edler's alleged conduct. *Id.* F.W.'s parents further explained that F.W. had disclosed the alleged abuse to them several years ago, and at that time, they confronted the Edlers about F.W.'s allegations. *Id.* In response, Cheri Edler suggested that F.W. and his mother had fabricated the claims. *Id.*

In light of this record, this Court does not find that newly discovered evidence warrants reconsideration of the Order Affirming Detention. Therefore, Defendant Thomas Edler's Motion for Rehearing/Reconsideration on Court's Order Overruling Objections and Affirming Detention

Order (D.E. 32) [D.E. 35] is **DENIED**.

    **DONE and ORDERED** at Fort Lauderdale, Florida, this 27th day of August 2013.

                                                       /s/ Robin S. Rosenbaum
                                                       ROBIN S. ROSENBAUM
                                                       UNITED STATES DISTRICT JUDGE

copies:

The Honorable Patrick M. Hunt
Counsel of Record