## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-cr-60168-BLOOM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

THOMAS EDLER,

      Defendant.

_____/

### ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Thomas Edler's Motion for Compassionate Release, ECF No. [81] ("Motion"). The Government filed its Response, ECF No. [84], to which Defendant filed a Reply, ECF No. [85]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

### I.     BACKGROUND

On February 24, 2014, Defendant pleaded guilty to transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (Count 1), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 2). *See* ECF Nos. [45], [54]; Plea Agreement, ECF No. [52]. On May 20, 2014, Defendant was sentenced to a term of imprisonment of 180 months, followed by a life term of supervised release. *See* ECF Nos. [72], [73]. Defendant is currently housed at FCI Fort Dix, at Joint Base MDL, New Jersey, and is scheduled for release on March 30, 2026. He has served nearly seven and a half years of his 15-year sentence.

Defendant requests compassionate release in order to take care of his ailing mother, arguing that she is unable to care for herself, her age and underlying medical conditions put her at increased risk of severe illness and death from COVID-19, and he is the only available caretaker for her.[1] He argues further that his significant rehabilitation while incarcerated, including his participation in vocational and educational programming and significant employment as Head Orderly for the Safety Department at his institution, and the fact that he has no disciplinary history, weigh in favor of compassionate release in this case. The Government opposes Defendant's Motion, arguing that Defendant has not established "extraordinary and compelling" circumstances to justify a sentence reduction, as he is not the only available caretaker for his mother, he still poses a significant danger to the safety of the community, and the section 3553(a) factors weigh strongly against his release.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 16,987,911 confirmed cases and 309,880 reported deaths as of December 18, 2020.[2] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William

---

[1] The Motion includes, in pertinent part, a letter from Defendant's mother, Barbara Edler, describing her conditions and current living situation. ECF No. [81-3]. Also attached to the Motion is a letter from Heidi Jahanpour-Burke, Mrs. Edler's friend, ECF No. [81-4], and a letter from Defendant, ECF No. [81-6].

[2] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Dec. 18, 2020).

Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a

motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>         . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent

they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction, the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). With these standards in mind, the Court considers the instant Motion.

## III.   DISCUSSION

### A.  Exhaustion of Administrative Remedies

In this case, Defendant has satisfied the first part of the Court's inquiry. In relevant part, Defendant submitted a request for compassionate release to the Warden of his facility on July 20, 2020, ECF No. [81-1], which was denied on September 9, 2020 because his mother's situation did not meet applicable BOP Program Statement 5050.50 criteria. ECF No. [81-2]. As such, Defendant has adequately exhausted his administrative remedies with the BOP.

### B.  Extraordinary and Compelling Circumstances

Nevertheless, Defendant's Motion is due to be denied on the merits because he fails to demonstrate that extraordinary and compelling circumstances exist in his case. In the Motion, Defendant argues that the fact that he is the only available caregiver for his mother, in conjunction with his significant efforts toward rehabilitation while incarcerated, constitute sufficiently extraordinary and compelling circumstances to justify compassionate release. Specifically, Defendant relies upon the catch-all provision in the Application Notes on section 1B1.13 of the Sentencing Guidelines. The Notes provide, in pertinent part, that

> extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (C) **Family Circumstances.**—
>    (i)  The death or incapacitation of the caregiver of the defendant's minor child or children.
>   (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

6

U.S.S.G. § 1B1.13, cmt. n.1.[3]

Defendant's mother, Ms. Edler, is eighty-five (85) years old and suffers from a number of serious and chronic health conditions, including emphysema, cardiomyopathy, atherosclerosis, chronic kidney disease, hypertension, chronic sciatica, and hypothyroidism. In addition, she has serious mobility limitations, which prevent her from performing basic daily functions such as bathing and dressing. She has already fallen numerous times and sustained serious injuries, and her health conditions put her at increased risk of severe illness and/or death from COVID-19. According to Defendant and Ms. Edler, her previous caregiver—her daughter and Mr. Edler's sister—passed away, and Ms. Edler has no remaining relatives near Las Vegas, where Ms. Edler lives. In the Motion, Defendant contends that his other sister, Janice Strippe, Ms. Edler's only other child, lives on the east coast and cannot relocate, and that Ms. Edler's siblings, who are also elderly and live on the east coast, are not available caregivers. As such, Defendant contends that he is the only available caregiver for his mother. While the Court is sympathetic to Ms. Edler's condition and need for help, Defendant fails to persuade the Court that Defendant is the only available caregiver under the circumstances.

---

[3] The Government observes that district courts around the country are split on the issue of whether, after the First Step Act, the catch-all provision allows courts, rather than the BOP, to determine what constitutes extraordinary and compelling reasons other than those specifically enumerated in Application Notes 1(A)-(C). *See* ECF No. [84] at 11. The Government argues that that better view is that only the BOP can determine that reasons other than those specifically set out in the Application Notes qualify as extraordinary and compelling. This Court, however, disagrees and determines that the better view is the one that gives effect to the First Step Act's overall purpose. *See United States v. Cantu*, 423 F. Supp. 3d 345, 351-52 (S.D. Tex. 2019) (concluding, based on the text, statutory history and structure, and Congress's ability to override the Sentencing Commission's policy statements, that "when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."); *see also United States v. Moody*, No. 05-80121-CR-Cohn, 2020 WL 4059659, at *3 (S.D. Fla. May 15, 2020) (acknowledging that Application Note 1(D) "authorizes courts to release an inmate upon 'an extraordinary and compelling reason other than, or in combination with, the [other] reasons described.").

At the outset, the Court agrees with the Government that Defendant fails to show extraordinary and compelling reasons in part because friends, like Ms. Jahanpour-Burke, or Ms. Edler's siblings, appear to be able to assist Ms. Edler. There is no showing that the assistance by Ms. Jahanpour-Burke, or Ms. Edler's siblings is unrealistic or unreasonable. The Court also finds that, overall, Defendant fails to make the necessary showing for other reasons.

First, although Defendant contends that Defendant's sister, Ms. Strippe, is not able to relocate to care for her mother, there is no indication that Ms. Edler cannot relocate to the east coast to be cared for by her family there. Second, the Motion is entirely silent with respect to any other potential family members, other than Defendant, who may provide care for Ms. Edler. Significantly, there is no mention of Ms. Edler's adult grandchildren (for example, Defendant's children) or any nieces or nephews, their locations, or potential ability or inability to provide care for her. While the Court acknowledges that requiring Ms. Edler to relocate, or that more distant family members provide care for her, may pose a less than ideal solution, a finding of compassionate release cannot rest solely on avoiding such inconvenience for a convicted inmate's family.

Defendant cites to several cases in which courts have granted, or at least recognized that, reductions in sentence are appropriate for a defendant to care for an ailing parent on the basis that the defendant is the only available caregiver. *See United States v. Hernandez*, No. 16-20092-CR-WILLIAMS, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (granting reduction in sentence where defendant was only potential caregiver for 84 year-old mother with serious health conditions); *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (granting reduction in sentence where defendant was only available caregiver for ailing mother); *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020) (defendant was only available caregiver, due to apparent

incompetence or neglect of hired aides, and daughter's inability or complete aversion to helping); *United States v. Ledezma-Rodriguez*, --- F. Supp. 3d -, 2020 WL 3971517, at * (S.D. Iowa July 14, 2020) ("[t]he Court agrees the need to care for a parent could be sufficient in some circumstances" to constitute an extraordinary and compelling reason); *United States v. Riley*, No. 2:12-cr-00062-wks-1, ECF No. [132] (D. Vt. May 12, 2020) (granting compassionate release based on defendant's medical condition and defendant's being the only available caregiver for father with failing health).[4] However, the cases Defendant relies upon are distinguishable, because the defendants there established that each was the only available caregiver for his parents.

In *Hernandez*, the defendant was the only available caregiver because his brother, who had been acting as the mother's caregiver, suffered a severe psychiatric episode and hospitalization that rendered him unable to continue to act as caregiver. *See* No. 16-20091-CR-WILLIAMS, ECF No. [553].[5] In addition, the defendant's other brother was not in a position to provide personal care for the mother based on the fact that he lived alone, three hours away, and worked full-time. *Id*. at 4. Similarly, in *Riley*, the defendant's siblings were not available to provide care for their father because the eldest son suffered from his own limiting physical disabilities, the middle son worked the nightshift and therefore could provide neither daytime nor nighttime care, and the daughter needed hip replacement surgery and was not strong enough physically to care for her father based on his needs. *See* No. 2:12-cr-00062-wks, ECF No. [123] at 6-7. Moreover, in *Bucci*, the defendant

---

[4] Despite the court's observations in *Lisi*, the court assumed the factual accuracy of defendant's representations concerning the availability of other caregivers, though ultimately, the defendant's motion was denied. 440 F. Supp. 3d at 252-53. In *Ledezma-Rodriguez*, the court determined that the defendant had not produced enough evidence that he was the only available child to care for his mother, when he had six other siblings for whom he had produced no evidence that they could not provide care. 2020 WL 3971517, at *7.

[5] *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (courts may take judicial notice of public records, such as a complaint filed in another court).

was the mother's only living child. *See* No. 1:04-cr-10194-WGY, ECF No. [656-1] at 15. Indeed,

the court in *Bucci* recognized that for a defendant to be the only available caregiver for a parent is

probably a rarer occurrence than for a spouse or partner, given that siblings or other family

members may be able to provide care for a parent. 409 F. Supp. 3d at 2 ("[w]hen a defendant is

the 'only available caregiver' for an incapacitated parent (perhaps a more unique occurrence given

that inmates may have siblings or other family members able to care for their parents), then, it is

likewise an 'extraordinary and compelling' reason warranting compassionate release.").

In this case, however, Defendant provides no evidence to support the determination that

comparable extraordinary and compelling reasons exist, aside from conclusory assertions that he

is the only available caregiver because Ms. Strippe is unwilling to relocate to provide care. Thus,

while the Court is sympathetic to Ms. Edler's condition and desire to be cared for by Defendant,

Defendant does not persuade the Court that relief on this basis is warranted.[6]

Defendant also contends that there has been a recent outbreak of COVID-19 at FCI Fort

Dix,[7] and while he does not suffer from any underlying medical conditions, his age of 56 places

him at heightened risk of complications, should he contract the virus. However, "the BOP Director

has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*,

No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United

States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible

exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a

reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate

---

[6] As another court has observed, "[m]any, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary." *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019).

[7] Currently, BOP is reporting 15 confirmed active cases in inmates and 47 in staff at FCI Fort Dix. *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (accessed Dec. 18, 2020).

release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL

2039726, at \*1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or

compelling circumstances to support compassionate release."). Defendant's age alone is

insufficient, where he admittedly has no underlying medical conditions that would place him at

high risk of serious illness or death from COVID-19.

As such, Defendant fails to demonstrate that extraordinary and compelling reasons exist

such that the Court would grant him compassionate release. Nevertheless, the Court certainly

commends Defendant for his concerted efforts toward rehabilitation while in custody and

encourages him to continue his efforts during the remainder of his sentence.

### C. § 3553(a) Factors and Danger to the Community

Because the Court finds that Defendant has not satisfied the requirement of demonstrating

extraordinary and compelling reasons justifying release, the Court does not consider the section

3553(a) factors or whether Defendant may still pose a danger to the community.

### IV.    CONCLUSION

For the foregoing reasons, it is therefore **ORDERED AND ADJUDGED** that the Motion,

**ECF No. [81]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 21, 2020.

 

 

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record